UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**FENASCI & ASSOCIATES, A.P.L.C.**                           **CIVIL ACTION**

**versus**                                                   **No. 05-5246**

**KATHLEEN L. SMILEY and the**
**LAW OFFICES OF KATHLEEN**
**L. SMILEY, P.L.L.C.**                                      **SECTION: I/1**

## ORDER AND REASONS

Before the Court is the motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure filed by defendants, Kathleen Smiley ("Smiley") and the Law Offices of Kathleen Smiley, P.L.L.C. ("Smiley's law office").[1]  For the following reasons, defendants' motion is **DENIED**.

### *BACKGROUND*

The claims filed by plaintiff, Fenasci & Associates, A.P.L.C., arise out of disputed payments for legal representation.  Plaintiff alleges that it was retained by Robert Holt to represent him in a personal injury matter.[2]  Holt was a resident of Mississippi, and plaintiff's representatives would meet Holt at Smiley's law office in Mississippi to coordinate his legal

---

[1] Rec. Doc. No. 10.

[2] Rec. Doc. No. 1, pp. 1-2.  Defendants, however, state that Holt came to their law offices and signed a contingency fee agreement, retaining Smiley to pursue all legal remedies on his behalf.  Rec. Doc. No. 10, pp. 1-2.  Defendants also aver that, because the case involved other states, they associated with an Alabama firm and a Minnesota firm to aid in the case.  Defendants contend that, when they received attorney's fees related to this case, these checks were handled by plaintiff's attorney, Michael Fenasci, in Mississippi.  Rec. Doc. No. 10, pp. 15-16.

1

affairs.  Holt's injuries were sustained in Alabama, and his employer at the time was a Minnesota trucking company.[3]  In October, 2005, Smiley's law office received attorney's fees related to the Holt matter and deposited these funds into the firm's client account.  Plaintiff made demand on Smiley's law office for all but $500 of these funds; Smiley refused this demand, and plaintiff alleges that defendants have converted these funds.[4]

In its amended complaint, plaintiff also alleges that defendants received funds from a New York corporation, One Hour Funding, L.L.C., also known as Law Cash ("Law Cash"), in return for a portion of the attorney's fees and costs related to *Harris v. Kerr McGee*, a case filed in the United States District Court for the Southern District of Mississippi.[5]  Plaintiff contends that, pursuant to an agreement entered into by plaintiff and Smiley in Louisiana, plaintiff owned 50% of the attorney's fees in that case.[6]  According to plaintiff, Smiley requested that plaintiff sign a Purchase and Sale Agreement as required by Law Cash so that Smiley and Smiley's law office could receive funding in exchange for their 50% stake in the *Harris* attorney's fees.  Plaintiff, believing defendants to be acting in good faith, signed the form.  Defendants later received a check for the *Harris* attorney's fees in the amount of $24,000 made payable to both plaintiff and Smiley's law office.  Plaintiff alleges that defendants did not contact it after receiving this check and, instead, contacted the payor, Kerr-McGee, and attempted to have a new

---

[3]Rec. Doc. No. 10, p. 4.

[4]Rec. Doc. No. 1, p. 2.

[5]Rec. Doc. No. 19, p. 1.

[6]Defendants contend that no agreements between Law Cash and Smiley's law office took place in Louisiana.  Rec. Doc. No. 10, p. 16.

check issued payable only to Smiley's law office.  Kerr-McGee refused to issue a new check.[7]  On February 23, 2006, plaintiff met with a representative of Law Cash in Louisiana and agreed not to execute any check or permit any disbursal of funds relative to the *Harris* matter without alerting Law Cash.[8]

Plaintiff also alleges that defendants have received attorney's fees related to five other cases in which defendants had previously agreed, in Louisiana, to pay plaintiff 50% of all fees recovered.  Plaintiff further alleges that Smiley's law office borrowed large sums of money from plaintiff and that defendants agreed, while again in Louisiana, to repay these loans.  Plaintiff contends, however, that defendants have failed to repay these loans despite plaintiff's demands.[9]

On November 2, 2005, plaintiff filed a complaint against defendants in this Court.[10]  Defendants filed the instant motion to dismiss on February 6, 2006, arguing that this Court cannot exercise personal jurisdiction over defendants in this case.[11]  Plaintiff filed its opposition on March 6, 2006.[12]

*LAW AND ANALYSIS*

**I. Rule 12(b)(2) and Personal Jurisdiction**

In the context of a motion filed pursuant to Rule 12(b)(2), a plaintiff must establish a

---

[7] Rec. Doc. No. 19, pp. 3-4.

[8] Rec. Doc. No. 19, p. 5.

[9] Rec. Doc. No. 19, p. 6.

[10] Rec. Doc. No. 1.  Plaintiff complaint was amended on May 9, 2006.  Rec. Doc. No. 19.

[11] Rec. Doc. No. 10.

[12] At 31 pages, plaintiff's opposition is six pages longer than permitted by Local Rule 7.8.1.  Plaintiff did not file a motion for leave to file a brief in excess of 25 pages.  Plaintiff is advised that any subsequent filing that does not comport with the Local Rules will not be accepted by the Court.

court's personal jurisdiction over the defendant. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). When considering such a motion, the court must accept as true "[t]he allegations of the complaint, except insofar as controverted by opposing affidavits." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985) (citing *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270-71 (5th Cir. 1983)). Further, "all conflicts in the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Id*.

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

With respect to the first prong, this Court must apply Louisiana's long arm statute, La. Rev. Stat. § 13:3201, because a nonresident defendant is subject to the personal jurisdiction of a federal court sitting in diversity in Louisiana to the same extent that the defendant would be amenable to the jurisdiction of a Louisiana court. *See Trinity Indus., Inc. v. Myer & Assocs., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995). However, the first prong of the personal jurisdiction analysis collapses into the second prong because Louisiana's long arm statute provides that a court may exercise jurisdiction over a nonresident defendant to the full extent provided by the due process clause of the United States Constitution.[13] *See* La. Rev. Stat. § 13:3201(B); *see also Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999); *Petroleum*

---

[13] Louisiana's personal jurisdiction statute states in pertinent part: "a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States." La. Rev. Stat. § 13:3201(B).

*Helicopters, Inc. v. Avco Corp.*, 513 So. 2d 1188, 1191 (La. 1987).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgment of a forum with which the individual has established no meaningful 'contacts, ties, or relations.'" *Dickson Marine*, 179 F.3d at 336 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985)).  The due process analysis is also two-pronged.  First, the defendant must "have certain minimum contacts with [the forum] such that the maintenance of the [law]suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 342-43, 85 L. Ed. 278 (1940)).  Second, it must be reasonable to require the nonresident to defend the lawsuit in the forum state.  *See Burger King*, 471 U.S. at 474-77, 105 S. Ct. at 2183-85.  Under the reasonableness prong, "[a] court must consider the burden on the defendant, the interests of the forum State, . . . the plaintiff's interest in obtaining relief[,] . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies[,] and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033, 94 L. Ed. 2d 92 (1987) (citing *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564, 62 L. Ed. 2d 490 (1980)) (internal quotation omitted).

Finally, the minimum contacts inquiry for personal jurisdiction may be subdivided into two categories:  specific jurisdiction and general jurisdiction. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996).  Plaintiff alleges that the Court has both specific and general jurisdiction over the defendants.  The Court will first analyze the general jurisdiction prong of the minimum contacts analysis.

**II. General Jurisdiction**

General jurisdiction exists when a defendant's contacts with the forum state are not related to the cause of action, but are continuous and systematic. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (internal citation omitted); *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 217 (5th Cir. 2000) (stating that in order to show contacts unrelated to the litigation are sufficient to satisfy due process, the contacts must be substantial, continuous, and systematic). "If a defendant has sufficient 'continuous and systematic' general contacts with the state, the forum may exercise general personal jurisdiction over the defendant for a 'cause of action that does not arise out of or relate to the defendant's activities in the forum state.'" *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 624 (5th Cir. 1999) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) (internal citations omitted)).

Plaintiff's memorandum presents a laundry list of cases in which defendants are purported to be involved and that provide sufficient "minimum contacts" with Louisiana to convey jurisdiction. Defendants appeared as counsel and defendant, respectively, in the related cases *Ingersoll v. West Delta Oil Co.* and *Ingersoll v. Muller*.[14] Plaintiff also cites *Scottsdale Insurance Co. v. Education Management, Inc.*, in which defendant appeared as counsel.[15] Plaintiff also lists eight state court cases in which defendants apparently served in some capacity. Plaintiff, however, failed to include any dates, case numbers, or any other identifying information such that the Court would be able to independently investigate these cases.

---

[14]*See* Case nos. 01-1406 and 03-2029, E.D. of La.

[15]*See* Case no. 04-1053, E.D. of La., Rec. Doc. No. 17.  In its opposition memorandum, plaintiff cites this case 14 times, listing almost every defendant individually and appending the same explanatory paragraph to each entry. *See* Rec. Doc. No. 13, pp. 4-11.

In further support of this Court's exercise of general jurisdiction, plaintiff provides evidence of defendants' other commercial activities in Louisiana, including loans that were wire-transferred from plaintiff's Louisiana client account to defendants,[16] an invoice from LexisNexis addressed to defendant Smiley at a Louisiana address,[17] letterhead suggesting that defendants employed a Louisiana employee,[18] correspondence implying that defendant Smiley had hired plaintiff as counsel concerning legal disputes,[19] and evidence that defendants paid rent in Louisiana for a four-month period in 2002.[20] Plaintiff also suggests that defendant Smiley owns an interest in Louisiana property, citing a personal financial statement signed by Smiley in 2003 that indicates a 50% interest in real estate in River Ridge, Louisiana.[21]

Accepting all of plaintiff's allegations as true and resolving all factual conflicts in favor of plaintiff for the purposes of this motion, the Court finds that defendants' contacts with Louisiana are sufficiently substantial, continuous, and systematic to sustain general jurisdiction.[22]

---

[16] Rec. Doc. No. 13, Pl.'s Ex. C-1.

[17] Rec. Doc. No. 13, Pl.'s Ex. C-4.

[18] Rec. Doc. No. 13, Pl.'s Ex. C-5. The letterhead reads "Law Offices of Kathleen Smiley" and lists Kelly Baldwin as a paralegal employed by the firm. Baldwin's affidavit states that she has been a life-long resident of Louisiana and employed by Fenasci & Associates for approximately 11 years. Smiley's affidavit, however, claims that neither she nor her firm have any employees who are residents of Louisiana. Rec. Doc. No. 10, Aff. of Pl., p. 2 ¶9.

[19] Rec. Doc. No. 13, Pl.'s Ex. C-2.

[20] Rec. Doc. No. 13, Pl.'s Ex. C-6.

[21] Rec. Doc. No. 13, Pl.'s Ex. D-1. Smiley's affidavit claims that neither she nor her firm own, lease, or have any interest in property in Louisiana. Rec. Doc. No. 10, Aff. of Pl., p. 2 ¶8.

[22] Finding general jurisdiction exists over defendants, the Court finds no need to discuss the specific jurisdiction prong of the minimum contacts analysis. The Court does note that, in support of its contention that personal jurisdiction does exist over defendants, plaintiff cites to five cases in which defendants allegedly "traveled into Louisiana and which directly involve the underlying cause of action in this litigation, namely, the failure to pay attorney fees and/or conversion of those fees owed to the plaintiff." Rec. Doc. No. 13, 19. "A court may exercise specific jurisdiction over a nonresident defendant when the claim asserted against the defendant arises out of or relates to his contact with the

Having found that defendants have sufficient minimum contacts such that maintaining this lawsuit does not offend traditional notions of fair play and substantial justice, the Court also finds that it is reasonable to require defendants to defend their case in the forum state.  In so ruling, the Court looks to the *Asahi* factors.  *Asahi*, 480 U.S. at 113, 107 S. Ct. at 1033 (1987).  While there is certainly some additional burden in requiring defendants to defend themselves in Louisiana, the interests of Louisiana, the plaintiff's interest in obtaining relief, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and the shared interest of the several states in furthering fundamental substantive social policies weigh in favor of having the case resolved in this Court.

Accordingly,

**IT IS ORDERED** that defendants' motion to dismiss is **DENIED**.

New Orleans, Louisiana, June __7th__, 2006.

_____
LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE

---

forum." *Planet Beach Franchising Corp. v. C3BIT, Inc.*, No. 02-1859, 2002 WL 1870007, *2 (E.D. La. Aug. 12, 2002).  A single act by the defendant directed at the forum state can be enough to confer specific in personam jurisdiction over the defendant if the cause of action arises out of that act.  *See Ruston Gas*, 9 F.3d at 419.  Plaintiff's allegations with respect to at least four of these cases suggest that these claims arise out of defendants' contact with Louisiana and, therefore, may also support a finding of specific jurisdiction.